IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF KANSAS

IN THE MATTER OF THE SEARCH OF:
109 MEGAN LANE, OTTAWA, KANSAS

Case No. 25-mj-08100-ADM

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

### Affiant's Training and Experience

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), a component of the U.S. Department of Justice, having been so employed since March 11, 2020. I am currently assigned to ATF Kansas City Group I, and charged with investigating violations of Federal Firearms, Explosives, and Arson Laws. I have successfully completed the Criminal Investigator Training Program and the ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to that, I was employed as a Police Officer with the Baltimore City, Maryland Police Department for approximately two years and an armed federal contractor for the Department of Homeland Security and Federal Protective Services for approximately one and a half years. I have been a member of the Army Reserves for approximately 19 years, where I am a Military Intelligence Officer and former Military Police Officer.

2.      I have received specialized training in narcotics, firearms, arsons and explosives related investigations and instruction pertaining to the laws of search and seizure. I have conducted and/or participated in investigations involving controlled substances, firearms, arsons, and explosives. I have written and executed federal search warrants and arrest warrants. I have participated in the execution of numerous search warrants including search warrants relating to the

illegal use, possession, and trafficking of firearms, the illegal use and possession of explosives, and the illegal use, possession, and distribution of controlled substances. I have conducted and/or participated in investigations resulting in the seizure of contraband, including firearms, narcotics, explosives, currency, and vehicles.

## Purpose of Affidavit

3.      This warrant is being sought in connection with an ATF investigation involving violation of 26 U.S.C. § 5861(d) – Possession of a Firearm Not Registered in the National Firearms and Transfer Record (NFRTR) and violation of 26 U.S.C. § 5861(i) – Possession of a Firearm Not Identified by a Serial Number, and there is probable cause to believe that items described in Attachment B (Items to Be Seized) are located at the residence at 109 Megan Lane, Ottawa, Kansas, further described in Attachment A (Location to be Searched), are evidence of, or have been designed or intended for use in committing or facilitating, violations of the above mentioned statutes.

## The Investigation into Eric GOMEZ

4.      I, ATF SA Joshua M. Temple am the case agent for a case involving Erik Peterson who was charged by the Grand Jury in the District of Kansas in an indictment.  The alleged crimes occurred on February 22, 2021, and stemmed from an incident in which Peterson, the sole occupant of the vehicle, was arrested by the Franklin County Sheriff's Office after a high-speed case. After Peterson was arrested, sheriff's deputies searched the 2014 Dodge Challenger and recovered a firearm with an attached unregistered silencer on it from the vehicle.  The firearm was identified as a Free State Armament, LLC, Model: FSAM4, multi caliber pistol, Serial Number: FSA20036. The indictment charged the following crimes:

> Count 1: 18 U.S.C. § 922(g)(1) – Possession of a Firearm by a Convicted Felon
>
> Count 2: 18 U.S.C. § 922 (g)(1) – Possession of Ammunition by a Convicted Felon

Count 3: 26 U.S.C. § 5861(i) – Possession of a Firearm Not Identified by a Serial Number

5.      Between April 28, 2025, and April 30, 2025, Peterson had a trial in the United States District Court for the District of Kansas (Case: 23-CR-20024) related to the above charges. On April 29, 2025, during Peterson's trial, Eric Gomez testified on behalf of the defense.

6.      Prior to testifying, Gomez was provided with and met with two different attorneys appointed by the Court to provide him with counsel regarding his testimony. Gomez chose to testify at the trial.

7.      As case agent in the Peterson investigation, I was present during Gomez's testimony.  The below represents a summary of statements made by Eric Gomez during his testimony in the trial and is neither intended to reflect a verbatim record of his testimony, nor is it necessarily presented in chronological order. The testimony was transcribed by a court reporter, but this affidavit was written without viewing or accessing the transcripts of the testimony.

8.      Gomez claimed ownership of the firearm during his testimony.  As described above in paragraph 4, when the firearm was recovered by law enforcement from the vehicle after Peterson's arrest, the firearm had attached to it an unregistered silencer with no markings or serial number. During his testimony, Gomez referred to the Free State Armament firearm as a "rifle" and stated the device on the end of the firearm was not a silencer but called it a "compensator" (a device commonly attached to the end of a barrel that redirects muzzle blast gases upward to reduce muzzle rise). Gomez testified that the day Peterson was arrested, Gomez had borrowed Peterson's vehicle, took the rifle to a location to sight in the firearm, (common terminology for the process of adjusting the sights to hit a target at a certain range) and left the firearm in Peterson's vehicle after doing so. The firearm was recovered from the vehicle Peterson was driving (sole occupant) during a highspeed chase with Franklin County Sheriff's Office (FCSO).

9.      The vehicle was registered to Peterson's mother. The firearm was fully loaded with ammunition and no evidence of additional ammunition, magazines, targets or other shooting supplies were located in the vehicle, which I would expect to be present had Gomez been sighting in the firearm as he claimed.  Additionally, the silencer attached to the Free State Armament firearm does not have any ports, openings or other ways to redirect muzzle gases upward, as a compensator is designed for.

10.     During Gomez's testimony he stated he resides at 109 Megan Lane, Ottawa, Kansas and keeps his firearms in a safe at his residence. Gomez testified he has over 90 firearms and stated he has the exact same "compensator" (referring to the silencer recovered) as the one on the Free State Armament firearm in the trial but in anodized gold (a different finish then the black finish on the silencer recovered on the firearm).

11.     On January 28, 2025, I served GOMEZ with a trial subpoena at the same residence, 109 Megan Lane, Ottawa, Kansas.  Gomez's Kansas driver's license also displays the same address.

12.     Prior to the trial, I submitted both the Free State Armament firearm and the silencer to the ATF Firearms and Ammunition Technology Division for evaluation and determination. Firearm Enforcement Officer (FEO) Jeffrey Bodell completed an examination of the Free State Armament, LLC, Model: FSAM4, multi caliber pistol, Serial Number: FSA20036 and determined it to be a firearm as defined in 18 U.S.C. § 921(a)(3)(A) and (B) and in 26 U.S.C. § 5845(a)(3). He also concluded the firearm has no NFA manufacturer's marks of identification as required by 26 U.S.C. § 5842.

13.     FEO Bodell completed an evaluation of the device on the end of the firearm found in the car Peterson had been driving.  Bodell and determined the silencer is a device for silencing, muffling, or diminishing the report of a portable firearm, and therefor is a "firearm silencer" as

4

defined in 18 U.S.C. § 921(a)(24). The silencer also meets the definition of a "firearm" as defined in 18 U.S.C. § 921(a)(3)(C) and 26 U.S.C. § 5845(a)(7). FEO Bodell also concluded the silencer bears no NFA manufacturer or maker's marks of identification or serial number as required by 26 U.S.C. § 5842.

14.     An interstate nexus was also conducted on the firearm showing the firearm had traveled in interstate commerce. Furthermore, the firearm was classified as a short-barreled rifle as defined in 18 U.S.C. § 921(a)(8). It is unlawful to possess a short-barreled rifle that is not registered in the NFRTR. However, Peterson was not charged with such a charge.

15.     The jury convicted Peterson of all three counts alleged in the indictment. The Court's instructions to the jury required them to find the device on the end of the firearm was a firearm silencer.

16.     The National Firearm Registration and Transfer Record (NFRTR) is the central registry of all NFA firearms in the U.S. which are not in the possession or under the control of the U.S. Government. The database is searchable both by individuals and by firearm serial numbers. I requested and received NFRTR records and determined Gomez does not have any silencers or other NFA firearms registered to him and the recovered Free State Armament firearm and silencer were also not registered with the NFRTR as required.

**COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

17.     Based upon my training and experience, I know that firearm silencers can be unlawfully purchased over the internet, including from sellers located in foreign countries. As described above and in Attachment B, this application seeks permission to search for records that might be found on the premises, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus,

5

the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

18.    *Probable cause.*  I submit that if a computer or storage medium is found on the premises, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

    a.    Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c.    Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file

system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    d.   Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

    e.   the crime; and other records that indicate the nature of the offense.

19.   *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

    a.   The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large

volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.  Technical requirements.  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.  Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

20.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

21.    Gomez testified at trial that he has several children.  Because several people share the Premises as a residence, it is possible that the Premises will contain storage media that

are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## Conclusion and Request

22.     Based on Gomez's statements about claiming ownership of the firearm recovered, joswhich is an unregistered NFA firearm, and his own admission under oath about having the same silencer ("compensator" as Gomez referred to it as) but in anodized gold, I believe Gomez is currently in possession of an unregistered silencer and possibly additional unregistered NFA firearms at his residence in violation of 26 U.S.C. § 5861(d) – Possession of a Firearm Not Registered in the NRFTR and violation of 26 U.S.C. § 5861(i) – Possession of a Firearm Not Identified by a Serial Number. I further believe there is probable cause to believe that items described in Attachment B (Items to Be Seized) are located at the residence at 109 Megan Lane, Ottawa, Kansas, are evidence of, or have been designed or intended for use in committing or facilitating, violations of the above-mentioned statutes.

23.     Based upon the foregoing, my training and experience, and through the evidence gathered in the course of this investigation, I believe there is probable cause that the items listed in Attachment B, incorporated by reference herein, which is property that constitutes evidence and/or fruits and instrumentalities of criminal offenses, are located at the residence at 109 Megan

Lane, Ottawa, Kansas, further described in Attachment A (Location to be Searched).

JOSHUA TEMPLE

Digitally signed by JOSHUA
TEMPLE
Date: 2025.05.14 08:32:38 -05'00'

Special Agent Joshua M. Temple
Bureau of Alcohol, Tobacco, Firearms and Explosives

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1

by telephone on this day  15th  of May 2025.

HONORABLE ANGEL D. MITCHELL
UNITED STATES MAGISTRATE JUDGE

Case No. 25-mj-08100-ADM

## ATTACHMENT A

109 Megan Lane, Ottawa, Kansas, including all outbuildings and structures located on the property.  The residence at 109 Megan Lane is a single-story residence on the southeast end of Megan Lane. There are several outbuildings/structures on the property. The main residence has a yellow front door, white siding, and black and grey trim and window shutters. It has an attached two-door garage on the southern end of the residence. The numbers "109" are affixed horizontally next to the front door of the residence.



1



There is an outbuilding/structure southeast of the residence, at the end of the driveway. It has white siding and a tan shingled roof. There are garage doors on both the front and back (east and west) sides of the building with an entrance door and window on the front (west) side of the outbuilding/structure.



2



There is a white and grey camper/trailer with red trim located south of the outbuilding/structure.
It has a wooden deck with white lattice detail to the entrance of the camper/trailer.

3



There is a white and grey outbuilding/structure east of all the other buildings.





Case No. 25-mj-08100-ADM

## ATTACHMENT B

**ITEMS TO BE SEIZED:**

1.  An unregistered, un-serialized firearm silencer, gold in color.

2.  Any other firearms required by the National Firearms Act (NFA) to be registered in the National Firearms and Transfer Record (NFTR), including but not limited to, short-barreled rifles and/or firearm silencers.

3.  All records relating to violations of the National Firearms Act or other federal firearms offenses including 26 U.S.C. §§ 5861(d) and 5861(i) including:

    a.  Records and information showing the procurement and/or possession, acquisition, ordering, purchase, and/or sale or disposition of NFA firearms, parts, and/or components, including but not limited to receipts, purchase orders, and photographs.

    b.  Records and information showing whether Gomez knew the devices in question were firearm silencer(s), including but not limited to, advertisements; web searches related to the NFA, silencers or compensators; and emails or other communications related to silencers or compensators.

4.  Indicia of occupancy, residency, ownership, management, and/or control of the premises described in Attachment A including, but not limited to utility and telephone bills, canceled envelopes and keys.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disk drives or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.